# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

NO. 5:12-CV-00735-FL

| | |
|---|---|
| HAROLD E. LUCAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| SERGEANT SEAN BRAKE, et al., | ) |
| | ) |
| Defendants. | ) |

This cause comes before the Court upon the following motions referred to the undersigned for entry of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1):

    Motion to Dismiss by Johnny M. Williams (DE-14)
    Motion to Dismiss by Norlina Police Department (DE-20)
    Motion to Dismiss Amended Complaint by Johnny M. Williams (DE-24)

Plaintiff has not responded to these motions, and the time for doing so has expired. Accordingly, the motions to dismiss are ripe for adjudication. For the reasons stated herein, the undersigned RECOMMENDS that the motions to dismiss be denied.

## I.    FACTUAL BACKGROUND

The amended complaint alleges that on the evening of October 15, 2010, at approximately 10:30 p.m., police officer Sergeant Sean Brake discovered Plaintiff Harold Lucas asleep inside his parked vehicle at a grocery store parking lot in Norlina, North Carolina. Am. Compl. ¶¶ 17-22, DE-22. Lucas had stopped at the parking lot to rest during his drive from Washington, D.C. to his home in Warrenton, North Carolina. *Id.* at

¶¶ 17-21.  Brake knocked on the driver side window, waking Lucas, and instructed him to get out of the vehicle.  *Id.* at ¶ 22.  As Lucas stepped out of the vehicle, Brake asked, "Are you having trouble getting out of the car, sir?"  *Id.* at ¶ 24.  Lucas replied that he had been resting and had just awoken to the officer banging on his window.  Brake then asked Lucas if he had been drinking.  Lucas replied that he had been sleeping.  Brake requested that Lucas take a breathalyzer test, which Lucas refused.  Brake then instructed Lucas to place his hands behind his back, and stated that he was under arrest for driving under the influence.  *Id.* at ¶¶ 25-29.  Lucas asked, "Why are you doing this?"  *Id.* at ¶ 30.  Brake replied, "Because I don't like you."  *Id.* at ¶ 31.  Brake then placed Lucas in handcuffs, arms behind his back.  The handcuff application was too tight and painful.  Lucas informed Brake that he was an attorney and that Brake did not have the probable cause to arrest him, and that this unlawful arrest violated his Fourth and Fifth Amendment rights.  *Id.* at ¶¶ 33-34.

After the handcuff application, two deputies with the Warren County Sheriff's Office arrived on the scene but never approached Lucas or his vehicle.  Brake placed Lucas in the front seat of his police vehicle and transported him to the Warren County Detention Center.  Lucas continued to protest his arrest and further complained that Brake did not allow him to lock his vehicle before leaving the scene.  Upon arrival at the Warren County Detention Center, Lucas passed by Warren County Sheriff, Johnny M. Williams, whom he knew personally and professionally.  Brake then escorted Lucas to a holding cell, where Lucas remained handcuffed as the sole occupant for over four hours, despite repeated requests to remove the handcuffs.  *Id.* at ¶¶ 35-41.

While Lucas was detained in the holding cell, a deputy with the Warren County Sheriff's Office recognized him as a former County Commissioner and asked him how he

was doing. Lucas responded that he was not doing well, and that he would like his handcuffs removed because they were unnecessary in his cell confinement and painful. The deputy agreed and informed Lucas that he would talk to the arresting officer and see what he could do. *Id.* at ¶¶ 42-44.

During the interim period, Lucas had managed with some difficulty to unbutton his suit pants and urinate in the cell's urinal. Due to the placement and position of his handcuffs, Lucas was unsuccessful in refastening his pants, and they remained around his lower legs for some time. When Brake returned to the detention cell, Lucas asked him to remove the handcuffs so that he could return his pants to waist level and secure them with his belt. Brake refused to remove the handcuffs, but did, however, drop to his knees in what Lucas believed to be a gesture of assistance to return his pants to a secure position. Brake extended his hands and grabbed Lucas's groin area. Cupping Lucas's testicles, Brake pulled Lucas's genitals towards his face. Lucas immediately backed up and asked Brake what he thought he was doing. Without answering, Brake grabbed Lucas's testicles, and pulled them towards his face. Brake's eyes remained fixed on Lucas's genitals as he reached down for Lucas's pants and returned them to his waist. Brake re-buttoned Lucas's pants but refused to zip the fly or fasten the belt of his trousers. *Id.* at ¶¶ 44-52.

Shortly after these events, North Carolina State Trooper Bradley Edwards arrived at the Warren County Detention Center to administer a breathalyzer exam to Lucas. Edwards informed Lucas he had thirty minutes to have a witness appear at the detention center before the breathalyzer test would be conducted. Lucas invoked his right to wait thirty minutes. Once the thirty-minute period had concluded, Edwards informed Lucas it was time to submit to the test. Lucas refused on the grounds that there was no probable cause for the test. After this refusal, Brake removed Lucas's handcuffs and escorted him to

stand before the magistrate at the detention center. Before reaching the magistrate, Brake informed Lucas that the chief of police, defendant Charlie Barker, had arrived at the detention center because Lucas had accused Brake of stealing from him. Lucas met with Barker and explained the incidents leading up to his arrest and confinement at the detention center. Lucas explained he had not accused Brake of stealing anything, but instead had informed Brake that he did not give Lucas the opportunity to secure his vehicle or his belongings within. *Id.* at ¶¶ 53-58.

When he appeared before the magistrate, Lucas contended that the arrest was unreasonable, unconstitutional and that there had been no probable cause or reason for his being brought to the detention center. After listening to Brake's account, the magistrate found there was sufficient cause for the arrest and set bail for Lucas at $1,000. Lucas contacted a friend to arrange his release. *Id.* at ¶¶ 59-61. The district court later dismissed the DUI charge against Lucas for lack of probable cause. *Id.* at ¶ 66.

Lucas filed his initial complaint on November 9, 2012, amended January 21, 2013. The amended complaint sets forth claims for civil rights violations pursuant to 42 U.S.C. § 1983, and state law claims of false imprisonment, gross negligence, negligent supervision, assault, sexual assault, battery, malicious prosecution, abuse of process, defamation, and negligence per se. Lucas pursues his claims against all defendants acting in their official and individual capacities and requests compensatory and punitive damages.

Defendant Johnny Williams now seeks dismissal of the initial and amended complaints. (DE-14, DE-24). Defendant Norlina Police Department ("Norlina") also seeks dismissal of the initial complaint. (DE-20).

## II. LEGAL STANDARDS

Defendants seek dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, a plaintiff must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The facts alleged must "raise a right to relief above the speculative level," id. at 555, and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id. A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 1950. Without such "heft," claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with" a defendant's liability, Twombly, 550 U.S. at 557, fail to nudge claims "across the line from conceivable to plausible." Id. at 570.

### III. ANALYSIS

#### A. Motion to Dismiss by Norlina, DE-20

Norlina moves to dismiss the initial complaint on the grounds that, as a police department, it is not an independent legal entity capable of being sued. However, it is well settled that a timely-filed amended pleading supersedes the original pleading, and that motions directed at superseded pleadings must be dismissed as moot. *See, e.g.*, Young v.

5

City of Mount Ranier, 238 F. 3d 567, 573 (4th Cir. 2001) ("The general rule . . . is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect."); Colin v. Marconi Commerce Sys. Employees' Ret. Plan, 335 F. Supp. 2d 590, 614 (M.D.N.C. 2004) ("Earlier motions made by Defendants were filed prior to and have been rendered moot by Plaintiff's filing of the Second Amended Complaint"). Plaintiff amended his complaint after Norlina filed its motion to dismiss. Norlina has not moved to dismiss the amended complaint. Because the amended complaint supersedes the initial complaint, the initial complaint is "of no effect" and Norlina's motion to dismiss the initial complaint is therefore moot. Young, 238 F.3d at 573. Accordingly, the undersigned recommends that Norlina's motion to dismiss the initial complaint (DE-20) be denied as moot, without prejudice to re-file. *See* Phillips v. Suntrust Mortg., No. 5:10-CV-389-BR, 2010 U.S. Dist. LEXIS 114951, at *1 (E.D.N.C. Oct. 28, 2010).

**B. Motions to Dismiss by Williams, DE-14, DE-24**

Williams argues that neither the initial complaint, nor the complaint as amended, alleges sufficient facts to state a claim against him. Further, Williams contends that the Court lacks jurisdiction because the amended complaint does not assert any claim against him arising under federal law. As such, Williams moves to dismiss the complaint and the amended complaint.

For the reasons stated above, the undersigned recommends that Williams' motion to dismiss (DE-14) the initial complaint, superseded by the amended complaint, be denied as moot.

The undersigned further recommends that Williams' motion to dismiss the amended

6

complaint against him be denied. The amended complaint accuses Williams of negligent supervision and negligence per se for failing to supervise the officers at the Warren County Detention Center to ensure Plaintiff's safe custody and prevent the assault by defendant Brake. Although the initial complaint asserted federal claims against Williams under 42 U.S.C. § 1983, the amended complaint sets forth only claims arising under North Carolina common law. *See* Am. Compl. ¶¶ 101-106, 130-134 (allegations against Williams of negligent supervision and negligence per se). Williams argues that, by amending the complaint, "Plaintiff removed this court's original jurisdiction and thereby removed the court's discretion to hear his state law claims against Sheriff Williams." Mem. Supp. Mot. Dismiss 14-15, DE-25. Williams is mistaken. The amended complaint asserts claims under 42 U.S.C. § 1983 against the remaining defendants, who have not been dismissed from the case. Thus, the federal claims in this case have not been extinguished, and the Court clearly retains original and supplemental jurisdiction over the case as a whole. *See* 28 U.S.C. § 1367(a) (providing that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

The question then becomes whether the Court should exercise supplemental jurisdiction over the state law claims, where no federal claim against Williams exists. As Williams concedes, "trial courts enjoy wide latitude in determining whether or not to retain

jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). When determining whether to retain jurisdiction, the court considers convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy. *See id.* "The doctrine of supplemental jurisdiction 'thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values.'" *Id.* (quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988)).

In the instant case, the state law claims against Williams unmistakably "form part of the same case or controversy" as the federal claims against the remaining defendants. Plaintiff's state claims do not present "complex and unsettled issues of North Carolina law which would be more appropriately resolved by a North Carolina court." McCullough v. Branch Banking & Trust Co., Inc., 844 F. Supp. 258, 260-62 (E.D.N.C. 1993) (describing discretionary analysis under 28 U.S.C. § 1367(c)(3)), *aff'd*, 35 F.3d 127 (4th Cir. 1994). The other defendants have not moved to dismiss the amended complaint, and thus it appears at this juncture that the Court will be considering the merits of the case. As such, considerations of judicial economy, as well as convenience to the parties, are best served by retaining supplemental jurisdiction over the state law claims at this time. The question of discretionary jurisdiction may, of course, be revisited if and when all existing federal claims in this case are extinguished. Until then, the undersigned recommends that the Court exercise supplemental jurisdiction and deny the motion to dismiss pursuant to Rule

12(b)(1).

With regard to the motion to dismiss on the basis of Rule 12(b)(6), Williams fails to address, let alone argue, the elements of a claim under North Carolina law for negligent supervision or negligence per se. As Williams fails to show that Plaintiff's state claims against him are insufficient as a matter of law, the undersigned recommends that the motion to dismiss pursuant to Rule 12(b)(6) be denied.

### IV. CONCLUSION

For the aforementioned reasons, the undersigned RECOMMENDS that the motions to dismiss (DE-14, DE-20, DE-24) be DENIED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Monday, June 3, 2013.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE